IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MICHAEL BOYTE,                           )
                                         )
                    Plaintiff,           )
                                         )
        v.                               )        1:20CV684
                                         )
KILOLO KIJAKAZI,                         )
Acting Commissioner of Social Security,[1] )
                                         )
                                         )
                    Defendant.           )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Michael Boyte ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.    PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI on July 10, 2017, alleging a disability onset date of June 15, 2017 in both applications. (Tr. at 15, 220-29.)[2] His

---

[1] Kilolo Kijakazi was appointed as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #10].

applications were denied initially (Tr. at 73-100, 131-35) and upon reconsideration (Tr. at 101-30, 143-60). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 161-62.) On May 13, 2019, Plaintiff, along with his attorney, attended the subsequent hearing, during which both Plaintiff and an impartial vocational expert testified. (Tr. at 15.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 24), and, on May 27, 2020, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

## II.   LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

2

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

_____

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. The ALJ therefore concluded that Plaintiff met his burden at step one of the sequential evaluation process. (Tr. at 17.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> lumbar degenerative joint disease (DJD) and lumbar disc bulge with L5 root facet compression, minimal right wrist radiocarpal degenerative disease, a learning disability, and residuals of a right hand fourth finger fracture[.]

(Tr. at 17.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 18-19.) Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform light work with the following, further limitations:

> [Plaintiff] is unable to climb ladders/ropes/scaffolds; is occasionally able to climb ramps/stairs; and is frequently able to balance, stoop, crouch, crawl, or

5

reach and handle with his right upper extremity. [Plaintiff] is able to understand, remember, and carry out one-to-two step instructions and read at the sixth grade level or less.

(Tr. at 19.) Based on this determination, the ALJ found at step four of the analysis that Plaintiff could not perform any of his past relevant work. (Tr. at 23.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled. (Tr. at 23-24.)

Plaintiff now raises two challenges to the ALJ's RFC assessment. In particular, Plaintiff argues that the ALJ (1) failed to account for Plaintiff's moderate limitations in concentration, persistence, and pace in the RFC assessment in accordance with Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), and (2) failed to provide adequate reasons for omitting opinion evidence from Dr. John Williams. After a thorough review of the record, the Court finds that Plaintiff's second contention requires remand, and the Court therefore need not address Plaintiff's first contention, since any remaining issues can be addressed by the ALJ on remand.

With respect to Plaintiff's contention regarding the opinion evidence, Plaintiff argues that the ALJ failed to provide adequate reasons for omitting discussion of medical opinion evidence rendered by Dr. Williams, Plaintiff's primary care provider. Under the applicable regulations for claims filed on or after March 27, 2017, [5]

> [The ALJ] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings,

---

[5] In 2017, the Social Security Administration revised its regulations governing the analysis of opinion evidence. Under the new regulations, for claims filed on or after March 27, 2017, decision-makers must consider the persuasiveness of each opinion as set out above. Because Plaintiff protectively filed his claim on July 10, 2017, these regulations govern in the present case.

Case 1:20-cv-00684-NCT-JEP   Document 18   Filed 02/24/22   Page 6 of 13

we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. . . .

(1) <u>Supportability.</u> The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) <u>Consistency.</u> The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

(3) <u>Relationship with the claimant</u> . . . [which includes]: (i) Length of the treatment relationship. . . (ii) Frequency of examinations. . . . (iii) Purpose of the treatment relationship. . . . (iv) Extent of the treatment relationship. . . [and] (v) Examining relationship. . . .

(4) <u>Specialization</u>. The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

(5) <u>Other factors</u>. . . . This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements. . . .

20 C.F.R. § 404.1520c(a) and (c). The regulations also require decision-makers to "articulate in . . . [their] decisions how persuasive [they] find all of the medical opinions . . . in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). Although all of the factors listed in paragraphs (c)(1) through (c)(5) of § 404.1520c should be considered in making this determination, the regulations specifically provide that the most important factors when evaluating the

7

persuasiveness of an opinion are the first two: supportability and consistency. 20 C.F.R. § 404.1520c(a), 404.1520c(c)(1)-(c)(2).

In this case, Plaintiff points to several statements in Dr. Williams' treatment note from September 29, 2017, chronicling Plaintiff's limitations. Specifically, this treatment note reflects that Plaintiff went to see his treating physician Dr. Williams on September 29, 2017 for evaluation of his disability claim, including imaging at the request of his lawyer. This appointment came a few weeks after a consultative examination by Dr. Stephen Burgess, which was conducted on August 29, 2017. At the appointment with Dr. Williams on September 29, 2017, Plaintiff presented for:

> Back Pain – needs an **MRI** for disability claim – would like to get back on pain meds
> Diabetes . . .
> Gastroesophageal Reflux . . .
> **Depression** . . .

(Tr. at 426 (emphasis in original).) Dr. Williams provided the following initial evaluation:

> I have known Michael for a long time. We have not seen him in a while due to the fact that he has not had insurance. He is diabetic. We are checking his A1c today. He has had chronic low back pain that is very limiting for him. He has difficulty bending, lifting, kneeling, squatting, climbing ladders and anything that involves prolonged exertion.
>
> He has been having this problem for a long time. He has a history of pain in the low back that radiates into the hips at times.
>
> He also has a history of **depression**. He has been off his antidepressant for a couple of years. He has done well in the past on his antidepressant.
>
> He does have diabetes. He has not been taking his medication. His A1c today is actually not bad at 6.9. His antidepressant in the past has been Paxil. He has **anxiety** and **social anxiety disorder**.

(Tr. at 428 (emphasis in original)). Dr. Williams conducted a physical examination, which reflected that "[h]e is tender to palpation midback lower lumbar area with bilateral

8

paravertebral muscle tenderness and spasm." (Tr. at 428.) Dr. Williams also conducted a depression screening using the PHQ-9, with a total score of 11, reflecting moderate depression. (Tr. at 428.) Dr. Williams then provided the following impression:

**Impression**
1. Chronic low back pain.
2. Type 2 diabetes mellitus with good control off medication.
3. Disabled. The patient has been for all intents and purposes disabled for the last year. He has worked a little bit here and there, but it has been very difficult for him.
. . . .
It is also very important to note that he has gone through 12th grade, but his education is really more like that of a 6th grader. He has had a learning disability that was not really addressed in his education. He reads poorly. He has significant intellectual deficit. I believe that this is a large part of his disability. We will make that known on his application for disability.

(Tr. at 429.) Finally, Dr. Williams ordered an MRI of Plaintiff's lumbar spine "[a]t his lawyer's request" as part of the disability evaluation. That MRI was taken a month later on October 13, 2017, and reflects the following:

MRI lumbar spine:

INDICATION: Low back pain radiating to legs. Symptoms for several years, worse lately
. . . .
FINDINGS:

#Vertebral bodies: No compression fracture.

#Alignment: Increased lordosis and lumbosacral angulation with nearly horizontal S1 and S2. No spondylolisthesis or spondylolysis. There is local thinning and sclerosis across the right L5 pars, without fracture.
. . . .
#L3-4 Normal disc. Mild facet arthropathy with effusions. Borderline narrowing of lateral recesses without compression of the L4 roots. Neuroforamen are patent.

#L4-5 Slight loss of disc signal and disc space height. No significant posterior bulge or protrusion. Mild facet hypertrophy. The lateral recesses are narrowed

but the roots are medial at this level without deviation or compression. Minimal encroachment of the upper neuroforamen by the superior facets.
#L5-S1: Minimal posterior bulge. Small facet effusions which continue medially beneath the ligamentum flavum. Superior facets cause some compression of the L5 roots in the proximal upper neuroforamen bilaterally. No central stenosis or S1 root

IMPRESSION:
1. Increased lordosis and lumbosacral angulation. Lower lumbar mild facet arthritis.
2. Superior facet hypertrophy at L5-S1 with <u>bilateral foraminal root compression</u>. Lesser degree of foraminal narrowing at L4-L5.

(Tr. at 433-34 (emphasis added).)

Plaintiff now contends that the ALJ's failure "to even mention, much less evaluate and articulate the consistency and supportability" of Dr. Williams' opinions constitutes reversible error. (Pl.'s Br. [Doc. #14] at 5.) In reviewing the ALJ's decision, it is clear that she did not reference nor discuss Dr. Williams' opinion. Indeed, the ALJ's decision does not reference, discuss, or even cite the September 29, 2017 treatment note from Dr. Williams at all, and the findings from that visit are not included anywhere in the ALJ's analysis. Notably, the ALJ also did not discuss, reference, or even cite to the MRI results from the imaging ordered by Dr. Williams. The ALJ did discuss earlier x-rays from August 2017 that "did not show any clear explanation for [Plaintiff's] pain" (Tr. at 21) but without further reference to the subsequent MRI by Dr. Williams that did provide much greater detail and explanation. In addition, with respect to Plaintiff's depression and anxiety, the ALJ found that "there are no diagnosis of anxiety or depression in the file" (Tr. at 18), without consideration of the September 29, 2017 treatment note from Dr. Williams reflecting testing showing moderate depression and a diagnosis of anxiety and social anxiety disorder (Tr. at 428). Thus, it appears that the ALJ completely failed to consider the entirety of Dr. Williams' treatment record from September

10

29, 2017, including the testing, evaluation, imaging, and opinion evidence. See Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." (internal quotation omitted)); Arakas v. Commissioner, 983 F.3d 83, 98 (4th Cir. 2020) (finding that the ALJ's decision was "unsupported by substantial evidence" where "the ALJ erred by [] selectively citing evidence from the record").

In response, Defendant contends that Dr. Williams' progress notes and clinical impressions did not constitute medical opinion evidence and that the ALJ was not required to address them. The regulations define a medical opinion as "a statement from a medical source about what [a claimant] can still do despite [his] impairment(s) and whether [he has] one or more impairment-related limitations or restrictions" in the following areas:

(i) [His] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

(ii) [His] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(iii) [His] ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(iv) [His] ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Defendant argues that none of the statements identified by Plaintiff as medical opinions meet this definition. However, Dr. Williams' record

reflects the difficulty Plaintiff has with working based on his chronic back pain which causes "difficulty bending, lifting, kneeling, squatting, climbing ladders and anything that involves prolonged exertion" as well as based on his intellectual deficit affecting his ability to read, learn, and work. (Tr. at 428-29.) These statements relate to Plaintiff's work-related limitations. Moreover, this is not a situation where the ALJ did not specifically weigh the opinion statements but nevertheless fully considered the substance of the findings in the analysis of the evidence of record; instead, as noted above, the ALJ failed to consider or address this treatment record in any part of the opinion. To the extent that Defendant provides various reasons for discounting Dr. Williams' statements, including that the opinion is vague or is not entitled to deference, or that Plaintiff subsequently improved, the Court notes that the ALJ could certainly have made those types of findings but did not do so here. The ALJ did not address Dr. Williams' treatment record, assessment, or imaging at all, and these are findings for the ALJ to make in the first instance, not the Court. As noted in Anderson v. Colvin, this Court's

> [r]eview of the ALJ's ruling is limited . . . by the so-called 'Chenery Doctrine,' which prohibits courts from considering post hoc rationalizations in defense of administrative agency decisions. . . . Under the doctrine, a reviewing court "must judge the propriety of [agency] action solely by the grounds invoked by the agency. . . . If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis."

Anderson v. Colvin, No. 1:10CV671, 2014 WL 1224726, at *1 (M.D.N.C. Mar. 25, 2014) (quoting Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947)).

Again, the Court notes that this is not a case where the ALJ evaluated the evidence and found a treating physician's opinion less persuasive. This is also not a case where the ALJ

12

considered a physician's opinion but did not separately consider multiple instances of the same or similar opinion. This is not even a case where the ALJ considered the substance of a treatment record but failed to address it again later in analyzing the opinion evidence. Instead, this is a case where the ALJ failed to consider, address, or even cite a treatment record that included opinion evidence, imaging, and testing, and that provided Plaintiff's strongest evidence in support of his claim.[6] In the absence of any evaluation of that evidence by the ALJ, the Court cannot follow the reasoning of the ALJ, and remand is required.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #15] should be DENIED, and Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #13] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, 24th day of February, 2022.

_/s/ Joi Elizabeth Peake___
United States Magistrate Judge

---

[6] The Court notes that at the Hearing, Plaintiff's counsel specifically argued "based on the MRI and the doctor's note" Plaintiff would "grid out at 201.12." (Tr. at 70.) The ALJ nevertheless failed to consider that evidence.

Case 1:20-cv-00684-NCT-JEP   Document 18   Filed 02/24/22   Page 13 of 13